UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PADMA RAMA PRASAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-144 JD |
| | ) |
| NANCY A. BERRYHILL, ACTING | ) |
| COMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | |

## OPINION AND ORDER

On February 21, 2017, Plaintiff Padma Prasad filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying her application for disability insurance benefits. [DE 1]. The matter is fully briefed and ripe for review. For the reasons stated below, the Court will remand this matter to the Commissioner for further consideration.

## FACTUAL BACKGROUND

Prasad filed her initial application for benefits alleging disability beginning on October 17, 2012, due to several issues: affective disorder/depression; anxiety/paranoia; hypertension; cardiovascular disorder; ankle disorder; and right hand disorder. Her application was denied initially, on reconsideration, and following an administrative hearing in November 2015, at which she was represented by counsel. At that hearing, the ALJ heard testimony from Prasad and vocational expert Thomas Gusloff. Ultimately, the ALJ found that Prasad had the severe mental impairments of affective disorder/depression and anxiety disorder/paranoia, but could still perform certain jobs available in the national and regional economy. Therefore, the ALJ

determined that she was not disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520(g). The Appeals Council denied review of the ALJ's opinion, making the ALJ's decision the final determination of the Commissioner.

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d

881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. *See* 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met, in between steps three and four, the

3

ALJ must then assess the claimant's residual functioning capacity ("RFC")[1], which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Prasad challenges the ALJ's decision on two grounds. First, she argues that the ALJ failed to properly assess her credibility regarding her alleged symptoms and limitations. Second, she believes that the RFC finding does not adequately account for all of the "moderate limitations" listed in Section I of the reviewing physicians' reports. The Court need not address her second argument due to the ALJ's insufficiently supported credibility finding, which undermines the RFC determination altogether.

Because an ALJ is in the best position to observe witnesses, an ALJ's credibility determination will not be upset on appeal so long as it finds some support in the record and is not patently wrong. *See Craft*, 539 F.3d at 678. Indeed, "[o]nly if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). However, as a bottom line, SSR 96-7p[2] requires an ALJ to consider the entire case record and articulate specific

---

[1] Residual Functioning Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

[2] In 2016, the Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p. The new SSR was issued after the ALJ's decision in this matter, however, it was only a clarification of the law and not a change in the law. Regardless, under either SSR version, the outcome in this case would be the same.

reasons to support his credibility finding. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). Further, while an ALJ is not required to provide a complete written evaluation of every piece of testimony and evidence, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); SSR 96-7p.

The process for evaluating a claimant's symptoms is organized around two major steps. First, the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(a)-(b). Second, after the claimant satisfies the first step, the ALJ must then evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. 20 C.F.R. § 404.1529(c). Here, the ALJ determined that Prasad's impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible to the extent they were contradicted by the record. (R. 22). In assessing Prasad's actual limitations and finding that Prasad is capable of working, the ALJ discounted Prasad's claimed inability to work based on the "normalcy" of her objective clinical findings, her conservative treatment, and her "lack of difficulty" with performing activities of daily living ("ADLs"). (R. 22-25).

**A.     Objective Clinical Findings**

In discrediting Prasad's allegations, the ALJ heavily relied on his analysis of her medical records. According to the ALJ, the overall clinical record "fails to objectively document significant psychiatric symptomology" despite multiple psychiatric diagnoses. (R. 24). The ALJ

5

noted that records obtained from Prasad's treating physicians, the consultative examiner, and the agency reviewing physicians collectively contained findings that Prasad presented as cooperative, appropriately dressed and groomed, responsive, alert, attentive, able to express herself, oriented, without focal deficits, and able to concentrate and comprehend. (R. 23-24, 93-94, 104, 331, 344-45, 369, 387, 390). The ALJ then concluded that the "normalcy" and "benign" nature of these observations, taken together, failed to support the allegation that Prasad's severe mental disorders "preclude her from completing basic work related activities." (R. 25).

In drawing this conclusion, the ALJ erred in two respects. First, the ALJ impermissibly engaged in "cherry picking" facts from the medical records which supported a less restrictive RFC. The ALJ cited and discussed the various "normal" clinical observations (identified above) without mentioning several other findings supporting the fact that Prasad's mental disorders were causing further impairment. For instance, with regard to records from Dr. Babu (a treating psychiatrist), the ALJ ignored his observations that Prasad presented as sad, depressed, anxious, tense, stressed out, paranoid, withdrawn, tired, and sluggish. (R. 369). He even noted that Prasad hears co-workers whispering and she "gets very paranoid and suspicious of their motives." *Id.* Dr. Babu further reported that Prasad experienced poor sleep, shortness of breath, and an inability to relax on account of being worried all of the time. *Id.* Still other medical records mention that Prasad presented with the associated symptoms of stress, trauma, and abuse. (R. 331, 386). Thus, the ALJ improperly discussed only those clinical observations that backed his less restrictive RFC determination, while neglecting to mention evidence from the same records that supported Prasad's allegations. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (An ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that

points to a disability finding.); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("It is not enough for the ALJ to address mere portions of a doctor's report.").

Second, the ALJ offered an insufficient explanation as to how the "benign" or "normal" observations were sufficient to reject medical opinions indicating that Prasad was "emotionally disabled," suffered from "major" depression and post-traumatic stress disorder, and had "marked" difficulty with social functioning. (R. 23-25). In essence the ALJ improperly "played doctor" by substituting his own knowledge for that of the trained physicians and supplanted their medical opinions with his own. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (the ALJ may not "play doctor" by using his own lay opinions to fill evidentiary gaps in the record). Although an ALJ is allowed to "reject physicians' opinions if [he] relies on other medical evidence and testimony and explains why that evidence points away from the opinions," *Featherstone v. Colvin*, No. 13-CV-6559, 2016 WL 147655, *6 (N.D. Ill. Jan. 13, 2016); here, the ALJ made an unsupported lay-person assumption that the "normal" clinical observations were sufficient to undermine medical opinions that consistently documented Prasad's significant psychiatric symptomology and resulting limitations. For instance, the ALJ did not rely on a medical opinion to support his finding that Prasad's general appearance and cooperation during appointments is sufficient to call into question repeated observations concerning her paranoia and social anxiety. In short, the ALJ failed to provide the requisite "logical bridge" connecting his credibility finding with the actual evidence of record, including those clinical findings and observations rendered by her doctors.[3] *Terry*, 580 F.3d at 475.

---

[3] This is especially problematic with respect to opinions by Prasad's treating doctors, because those opinions are ordinarily afforded special deference in disability claims filed before March of 2017. 20 C.F.R. § 404.1527(c)(2).

7

## B. Conservative Treatment

In addition, the ALJ discredited Prasad's allegations based on her conservative treatment record. Prasad argues that the ALJ should have, but did not consider several factors that influenced her non-receipt of further medical care. [DE 13 at 6].

Failure to seek medical treatment in the face of claimed illness can be a factor in evaluating credibility. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Schaaf v. Astrue*, 602 F.3d 869, 876 (7th Cir. 2010). Nonetheless an ALJ "'must not draw any inferences' about a claimant's condition from [her failure to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft*, 539 F.3d at 679 (citing SSR 96-7p). "ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking or receiving medical care." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013) (citing *Godbey v. Apfel*, 238 F.3d 803, 809 (7th Cir. 2000)).

Specifically, Prasad faults the ALJ for not taking her cultural background into consideration when discussing her credibility. [DE 13 at 6]. During the hearing, Prasad explained that in her culture, people do not go to the doctor very often or take medication for pain. (R. 58). Prasad is correct: the ALJ did not discuss this issue at all in his opinion and the Commissioner did not respond to Prasad's argument regarding the same. [DE 14]. Because the ALJ had a duty to consider this explanation for Prasad's conservative treatment record, but failed to discuss it, the ALJ erred in this respect. *Craft*, 539 F.3d at 679.

More significantly, Prasad contends that the ALJ failed to consider the fact that she lacked adequate health insurance coverage during the majority of the relevant time period. [DE 13 at 6]. A claimant's inability to afford medication or doctors' visits can excuse the failure to

seek such treatment. *Myles*, 582 F.3d at 677; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (noting that "the agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment") (citing SSR 96-7p, at *8).

The record contains evidence that Prasad stopped seeing an outpatient counselor – who she described as "very helpful" – and stopped taking her Abilify because her insurance coverage ran out. (R. 343). She testified to this fact during the hearing. (R. 46). Prasad further explained that while she had obtained Medicaid in 2014, it only covered hospitalizations. (R. 47). However, upon receiving Social Security benefits earlier in 2015, she planned to see Dr. Babu again and pay for her prescriptions. *Id*. Prasad also verified that her husband had trouble holding a steady job, and as a consequence, his health care insurance repeatedly terminated along with his employment, leaving Prasad without coverage. (R. 48).

The ALJ's opinion makes no mention of this evidence and Prasad's testimony in this respect, when the ALJ discredited Prasad for failing to be more proactive in seeking treatment. Rather, the entirety of the ALJ's analysis on Prasad's conservative treatment consists of the following statement: "the claimant's treatment record during the period in question is sporadic at best, with approximately two visits in 2012, no visits in 2013, three visits in 2014, and one visit in 2015." (R. 23). Beyond this single statement, the ALJ provided *no* discussion whatsoever of the evidence which clearly indicates that Prasad's lack of health insurance coverage caused (or at the very least, contributed to) her failure to seek more treatment. This error requires remand. *See Craft*, 539 F.3d at 679 (remanding where the ALJ drew a negative inference from claimant's lack of medical care because she did not address evidence reflecting claimant's inability to pay for regular treatment or medicine); *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (finding that the ALJ erred in discrediting the claimant based on an absence of objective support

9

for the limitations where the claimant's lack of insurance prevented her from seeking medical attention).

Also problematic is the fact that the ALJ indicated that Prasad's lack of emergency treatment or inpatient psychiatric hospitalization meant that her symptoms could be managed so she could work. (R. 23). However, the Seventh Circuit has noted that "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Thus, a claimant is not required to be hospitalized in order to demonstrate a severe mental impairment. *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004). On remand, the ALJ should more carefully consider and explain whether the lack of emergency treatment or inpatient hospitalization impacts Prasad's credibility, especially given her other medical records which document her severe mental impairments and the ongoing limitations that they cause.

**C.      Activities of Daily Living**

Prasad also contests the ALJ's heavy reliance on her driving capabilities in assessing the severity of her allegations. [DE 13 at 7-8]. (R. 20-21). The Commissioner counters that Prasad's ability to drive is a recognized ADL that the ALJ is entitled to consider as one of a number of factors when assessing subjective complaints. [DE 14 at 9].

Here, the ALJ rejected Prasad's allegations of severely limited psychiatric functional abilities based on her "apparent unrestricted mental ability to operate a motor vehicle." (R. 20-21). However, the record indicates that Prasad's driving is not so "unrestricted." Indeed, within the very report cited by the ALJ, Prasad states that she can drive "short distances only" because she is afraid to drive, and even then, she only drives after her family forces her to go out and be

independent. (R. 251). In addition, the record contains evidence that Prasad has been involved in automobile accidents due to anxiety attacks. (R. 314). The ALJ ignored these points when he concluded that Prasad enjoys an unrestricted ability to drive; and in turn, the ALJ improperly discounted her claimed limitations based on this mischaracterization of the record.

The ALJ's credibility determination also relied on Prasad's ability to function independently outside the area of her home, given that she shops in stores, goes out with friends, and interacts with her neighbors. (R. 23). While a claimant's ADLs are an appropriate factor for an ALJ to consider, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities . . . does not necessarily translate into an ability to work full-time." *Roddy*, 705 F.3d at 639. Similarly, when an ALJ considers a claimant's activities, they should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant. *Craft*, 539 F.3d at 680. The ALJ did not do so here.

While the ALJ generally referred to Prasad's difficulties interacting with others (R. 20, 25), his references understate the magnitude of her social limitations. For example, the ALJ said nothing about the fact that Prasad only goes out of the house when someone forces her to go out or when someone familiar takes her out. (R. 251-52). Nor did the ALJ discuss the fact that Prasad is afraid of meeting people and got fired after others complained about her. (R. 254). Thus, the ADL's upon which the ALJ relied say little about whether Prasad is mentally able to maintain full-time employment, and get along with others, even with limited interaction. *Roddy*, 705 F.3d at 639; *Bjornson*, 671 F.3d at 647. In other words, the ALJ did not provide the necessary "logical bridge" explaining how Prasad's ability to perform these particular ADLs render her mentally and emotionally fit for full-time work. *Terry*, 580 F.3d at 475.

Ultimately, remand is required because the ALJ formulated an RFC that was based on discounted limitations, without sufficiently substantiating the reasons for discounting Prasad's allegations regarding the restrictions caused by her mental disorders. (R. 22); *see also* 20 C.F.R. § 404.1545. Therefore, in assessing Prasad's RFC on remand, the ALJ must reconsider and provide an adequate explanation for the weight accorded Prasad's subjective complaints; and then, based on an adequate (and accurate) discussion of the record evidence, identify whether (based on the assigned RFC) Prasad can sustain a full-time work schedule, despite the problems caused by the totality of her impairments. *See id*.; SSR 96-8p. Thus, despite counsel's request for an award of benefits, the remedy for the shortcomings noted herein is further consideration.

## CONCLUSION

For the reasons stated herein, the Court hereby **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: March 30, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court